## Appeal of KOSSAR & COMPANY, INC.

Docket Nos. 5932, 6293. Decided September 28, 1926.

Petitioner was not a personal service corporation during 1918 and 1919.

*Isaac N. Jacobson, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the Commissioner.

These appeals involve deficiencies for the years 1918 and 1919 in the amounts of $4,760.05 and $3,935.48, respectively, arising from the Commissioner's denial of petitioner's claim that it should be classified as a personal service corporation. Separate petitions were filed for each year and were consolidated for hearing and decision.

### FINDINGS OF FACT.

Petitioner is a New York corporation, organized in 1912, engaged in selling live poultry on commission, with its principal place of business in the City of New York. Its authorized capital stock was $20,000, divided into 200 shares of the par value of $100 each, the whole of which was issued for cash.

The stockholders and the amount of stock held by each in 1912 was as follows:

|  | Shares. |
| --- | --- |
| Max Kossar | 50 |
| Edward M. Blumenkranz | 50 |
| Wm. Simon | 50 |
| Max Sokoloff | 25 |
| Isaac Dinerman | 25 |

In 1914 Kossar and Blumenkranz purchased the stock of Simon and became the owners of 75 shares each, no further changes occurring until 1922.

The assets and liabilities of the petitioner during the years in question were as follows:

|  | 1918. | 1919. |  | 1918. | 1919. |
|---|---|---|---|---|---|
| **ASSETS.** | | | **LIABILITIES.** | | |
| Cash | $12,963.89 | $35,610.00 | Notes payable | $35,960.00 | $45,002.00 |
| Accounts receivable | 71,888.25 | 114,140.24 | Accounts payable | 15,250.11 | 54,744.11 |
| United States bonds at cost | 24,000.00 | 24,699.28 | Capital stock | 20,000.00 | 20,000.00 |
| Office furniture | 2,050.00 | 2,050.00 | Surplus | 39,692.03 | 56,753.41 |
| | 110,902.14 | 176,499.52 | | 110,902.14 | 176,499.52 |

Petitioner sells poultry for the account of shippers, receiving a commission of 4 per cent of the proceeds of the sales. Accounts of sales are rendered to the shippers. It is licensed as a commission agent under article XX of the Farm and Market Law of the State of New York.

The essentials of the business consist of the solicitation of accounts of shippers and the sale of the poultry. This work was performed exclusively by Kossar and Blumenkranz. The other stockholders had no part in the conduct of the business and received no compensation. The other employees were a bookkeeper and a telephone operator and four men who performed manual labor in unloading and loading the goods. Kossar and Blumenkranz were experienced commission agents and desired to enter the field on their own account. Simon was a slaughter-house man operating a large market in the City of New York and purchasing a considerable quantity of live poultry. Dinerman and Sokoloff were slaughter-house men operating two large markets and were large purchasers of poultry. The mutual advantages in Dinerman and Sokoloff becoming interested in petitioner's business were that they furnished a substantial and ready outlet for poultry handled by petitioner. The success of the commission business depends upon the procurement of the accounts of shippers and a speedy and advantageous disposition of the poultry, which is a highly perishable commodity, subject to considerable shrinkage and market fluctuations, and must be regularly fed and watered. This requires immediate movement of the goods into consumptive channels, and upon the ability to do this depends the commission agent's ability to obtain a shipper's account. Both Kossar and Blumenkranz were experienced in this line. Dinerman and Sokoloff were not, and were unknown to the shippers. They took no part in the business except to purchase poultry goods the same as any other buyer. For the purpose of procuring shippers' accounts, both Kossar and Blumenkranz visited the shippers and solicited accounts by mail. Every account acquired by petitioner, without ex-

ception, was due to the efforts of Kossar and Blumenkranz. The handling and sale of the goods was also entirely discharged by Kossar and Blumenkranz. Every branch of the business was conducted by Kossar and Blumenkranz, the interests of the other stockholders being purely passive and financial. They were taken into the business only because they furnished a ready and substantial outlet for a large part of the poultry handled.

From the time of incorporation until 1917, Kossar and Blumenkranz each received a salary of $4,600 yearly, which was charged to expense. Their salaries were increased to $5,725 in 1918, and $7,800 in 1919. Neither of the other stockholders or any one in their behalf received any salary or compensation of any kind from the petitioner. Kossar and Blumenkranz had no other business, employment or investments and devoted their entire time to the petitioner's business.

The petitioner handled poultry in three ways: (1) Consignment, being poultry received for sale for account of shippers, solely upon a commission basis; (2) joint account, being poultry received from shippers, in which the petitioner and shippers shared profits and losses, on which no commission was received; and (3) purchases, being poultry bought and sold by the petitioner entirely for its own account.

The total sales of each of such branches during the years in question were as follows:

|  | 1918. | 1919. |
|---|---|---|
| Consignment | $1,775,000 | $3,267,500 |
| Joint account | 376,500 | 388,500 |
| Purchases |  | 100,000 |

The income for 1918 on consignment was $44,481.56 and on joint account transactions was $10,638.56. The income for 1918 on consignment was $88,067.05 and on joint accounts was $3,404.54. The income on purchases is not disclosed by the record.

After the poultry is gathered and shipped, the shipper forwards the bill of lading therefor, to which is attached a draft for a portion of the contemplated proceeds. For the amount of this draft the petitioner gave its note to its bank and that sum was thereupon credited to the petitioner's account and the draft paid. The bill of lading is thereupon delivered to the petitioner and upon the sale of the poultry it paid the note and remitted the net proceeds to the shipper, less its commission.

The loans above referred to were obtained by the petitioner throughout the taxable years in the following amounts:

| | Notes given in 1918. | Notes given in 1919. | | Notes given in 1918. | Notes given in 1919. |
|---|---|---|---|---|---|
| January | $24,500 | $76,000 | August | $80,000 | $43,000 |
| February | 15,000 | 50,000 | September | 55,000 | 44,500 |
| March | | 14,000 | October | 51,000 | 30,000 |
| April | | 88,500 | November | 26,000 | 79,500 |
| May | 31,000 | 25,500 | December | 34,000 | 20,500 |
| June | 55,000 | 60,000 | | | |
| July | 69,000 | 48,000 | Total | 450,500 | 579,500 |

OPINION.

LITTLETON: It is contended that the capital in use in petitioner's business was not a material income-producing factor in respect of sales on consignment, but was a material income-producing factor only in respect of sales on its own account; that capital was not essential or necessary in respect of the consignment business transacted, but was necessary only in respect of the business in which it traded as a principal. The facts herein disclose that the petitioner, in addition to its invested capital, used money borrowed from the bank in 1918 and 1919 in the amounts, respectively, of $450,500 and $579,500 to pay the drafts attached to the bills of lading for poultry consigned to it. The loans upon notes are not in question, but it is contended that no part of this money was retained, kept or used in the business, and was not borrowed for use in its business, but that it was a loan to the shipper upon the security of the bill of lading entrusted to the petitioner for the sale of the poultry whereupon the loan was immediately taken up. It is obvious from the facts disclosed that the bill of lading could not be delivered to the petitioner until the draft attached to it was paid, and for this purpose the petitioner used borrowed capital, at least until the poultry could be unloaded, sold, and the money repaid, which usually covered a period of ten to fifteen days.

With these facts before us we are constrained to hold that capital was a material income-producing factor and petitioner is not entitled to classification as a personal service corporation. *Appeals of Cliver-Wright-Rainey Co.*, 2 B. T. A. 561, and *John Dais Co.*, 2 B. T. A. 1167; *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410.

*Judgment for the Commissioner.*